(644 P.2d 480)
No. 53,051

JIM KRISTEK, *Plaintiff-Appellee,* v. JAMES A. CATRON, JR., *Defendant-Appellant.*

Petition for review denied June 28, 1982.

Opinion filed May 6, 1982.

*Charles F. Harris,* of Kaplan and McMillan, of Wichita, for the appellant.

*Marjorie Wholey Haines,* of Garrity, Fletcher, Haines, P.A., of Wichita, for the appellee.

Before FOTH, C.J., REES and PARKS, JJ.

PARKS, J.: This action was brought by plaintiff Jim Kristek against defendant James Catron to recover damages for the negligent construction of plaintiff's residence. Following a bench trial plaintiff was awarded judgment in the amount of $1,470 and costs. Defendant appeals.

The house now owned by plaintiff was constructed by defendant under a contract with Centurian Investments. The house was completed in 1975 and sold to plaintiff by Centurian in March 1976. Over two years later, in December 1978 plaintiff noticed several stains on the ceiling and walls of the house resulting from water leakage. At trial, an experienced roofer testified on behalf of plaintiff that in his opinion the lack of felt under the shingles and the incorrect placement of nails on the roof caused the leaking which stained the walls and ceiling. This expert also testified that to properly remedy the leaking, the entire roof would have to be replaced.

Defendant first contends that the trial court erred in ruling that the two-year statute of limitations on negligence did not bar this action (K.S.A. 60-513) because construction of the residence was completed in October 1975, while the lawsuit was not filed until October 1979.

K.S.A. 60-513(*b*) provides:

"Except as provided in subsection (*c*) of this section, the cause of action in this action [section] shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

Defendant argues that the leak in the roof must have existed prior to December 1978 when plaintiff first noticed water spots on his ceiling. Plaintiff agrees that the leak must have existed prior to the time the water spots appeared on the ceiling but argues that discovery of the leak prior to that time would have required him to either remove the shingles on the roof or regularly inspect the crawl space above the ceiling. Plaintiff further argues that these are not normal inspection procedures that a homeowner would make; therefore, the leak was not reasonably ascertainable under 60-513(*b*) until the water spots first appeared on the ceiling.

When, as here, the evidence is in dispute as to when substantial injury first appears or when it becomes reasonably ascertainable, the issue is for determination by the trier of fact. *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 562, 608 P.2d 936 (1980). On appeal, the trial court's findings of fact will be upheld if supported by substantial competent evidence. *Jerry L. Phillips, Inc. v. Ratley*, 6 Kan. App. 2d 157, 160, 627 P.2d 339 (1981). Plaintiff first noticed water spots on his ceiling in December 1978, but plaintiff's expert testified that the leak may have existed for some time prior to the appearance of the stains. In addition, he stated that the roof construction was such that it may not have started to leak until some two years after completion. We conclude that the trial court's finding that the leak was reasonably ascertainable for less than two years prior to the filing of this action is supported by substantial competent evidence.

Defendant also contends that as a matter of law, he could not be liable to plaintiff for negligence because the work he performed as a building contractor was completed and accepted by the party to whom the performance was owed. 13 Am. Jur. 2d, Building and Construction Contracts § 139. This principle of the non-liability of building contractors to third parties has a long if largely discredited history. See Annot., 58 A.L.R.2d 865, 891. In *Talley v. Skelly Oil Co.*, 199 Kan. 767, 776-78, 433 P.2d 425 (1967), the

Court acknowledged that Kansas had paid lip service to the accepted work doctrine in the past but concluded that the following rule was the better one:

"A building or construction contractor is liable for an injury to a third party resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, where such work is reasonably certain to endanger third persons if negligently done." 199 Kan. 767, Syl. ¶ 2.

Because the facts of *Talley* involved a personal injury, defendant argues that the holding is limited to personal injury cases and should not be extended to cases such as this one which only involve economic injury. The rationale for the non-liability rule is generally premised on the lack of privity of contract between the building contractor and third persons. *Talley,* 199 Kan. at 776. By holding that an injured third party may sue for the negligence of a contractor, the *Talley* court rejected the need for privity. The characterization of the injury of the third party as personal or economic should not alter the conclusion that privity is unnecessary in a negligence action.

*Talley* also noted that only one previous Kansas case had employed the accepted work doctrine but observed that the plaintiff in that case failed to allege in his petition negligence by the defendant. *Engler v. Aldridge,* 147 Kan. 43, 47, 75 P.2d 290 (1938). Although the *Engler* case only involved property damage and was in part distinguishable on the ground that negligence was not alleged, the Court stated, "To the extent, however, that the Engler decision may be said to conflict with our present holding, the same is disapproved." *Talley,* 199 Kan. at 778.

If the *Talley* rule were intended to be limited to personal injury cases, no such disapproval would have been necessary.

Further support for rejecting the limitations on *Talley* urged by defendant is found in the fact that some of the cases cited by that court in justifying rejection of the non-liability rule involved property damage. See, *e.g., Russell v. Whitcomb,* 100 N.H. 171, 121 A.2d 781 (1956) (plaintiff alleged property damage when defendant failed to properly refill an excavation in a public highway in which defendant was constructing a sewer line for City). Finally, the accepted work doctrine's restriction of liability on grounds of privity of contract is simply not in line with

modern authorities or principles of liability. Prosser, Law of Torts § 104, p. 681 (4th ed. 1971).

In *McDonough v. Whalen,* 365 Mass. 506, 313 N.E.2d 435 (1974), plaintiff homeowners brought an action against a contractor for the negligent installation of a septic system. There the court held that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relationship and even though his work was completed and accepted by the owner before the injuries or damage occurred. The Massachusetts court further held that liability will be imposed only if it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises.

The Supreme Court of South Dakota concluded in *Brown v. Fowler,* 279 N.W.2d 907 (S.D. 1979), that defendants were under a duty, running to the Browns, to construct the house non-negligently, that plaintiffs were members of the class of purchasers for whom the house was constructed even if they were not the first purchasers. The court went on to say that it is certainly foreseeable that such a house would be sold to subsequent purchasers and that any defects are as certain to harm the subsequent purchasers as the first.

*Navajo Circle, Inc. v. Development Concepts,* 373 So.2d 689 (Fla. Dist. Ct. App. 1979) was a suit by a condominium association and a unit owner against the architect for negligently supervising the construction and subsequent repairs of the roof of a condominium building and the contractor for negligently constructing the roof, causing damage to the roof and damage to the exterior and interior walls. The court held that no privity is required to allege a cause of action for negligent performance of a contractual obligation. The court cited *A.R. Moyer, Inc. v. Graham,* 285 So.2d 397 (Fla. 1973), as authority for the principle that a party who may foreseeably be injured or sustain an economic loss caused by the negligent performance of a contractual duty of an architect has a cause of action against such architect. See also *Drexel Properties, Inc. v. Bay Colony, Etc.,* 406 So.2d 515 (Fla. Dist. Ct. App. 1981); *Porras v. Campbell Sales Co.,* 121 Ariz. 320, 589 P.2d 1352 (Ct. App. 1978); *Driscoll v. Columbia Realty-Woodland Park,* 41 Colo. App. 453, 590 P.2d 73 (1978); *Koncinsky v. Smith,* 390 So.2d 1377 (La. App. 1980); *Amer. Recip. Insurers v. Bessonette,* 241 Or. 500, 405 P.2d 529 (1965). Contra,

*Ins. Co. v. Homes,* 64 Ohio St.2d 269, 416 N.E.2d 623 (1980); *Redarowicz v. Ohlendorf,* 95 Ill. App. 3d 444, 420 N.E.2d 209 (1981).

We agree with these authorities and hold that a purchaser of a residence may recover property damage caused by the negligence of its builder despite the lack of any contractual relationship with the builder. Therefore, a construction contractor is liable for any injury to a third party, personal or economic, resulting from work negligently performed even though the injury occurs after completion of the work and its acceptance by the owner, when such injury is reasonably certain to occur if the work is negligently done.

Defendant also maintains that the trial court erred in finding that the defendant's negligence was the proximate cause of plaintiff's damages. Plaintiff's expert witness testified that in his opinion the leak was caused by lack of felt and improperly placed nails. When there is no evidence of any other cause for the leaks complained of in this case, the expert's evidence is sufficient to sustain the verdict on appeal. *Marcotte Realty & Auction, Inc. v. Schumacher,* 229 Kan. 252, Syl. ¶ 1, 624 P.2d 420 (1981).

Finally, defendant claims that the judgment awarded plaintiff was excessive. The trial court awarded as damages the cost of replacing the entire roof. Defendant argues that this award is unsupported by the evidence and that the award should be the cost of repair rather than the cost of replacement. Again, the only evidence on this point was that of the plaintiff's expert witness who testified that it was necessary to replace the roof in order to stop the leak and estimated such cost to be $1,460, the amount of damages actually awarded. Therefore, we are compelled to find that there was substantial competent evidence to support the damage award.

Affirmed.