**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**Donald ASHLEY, et al., Defendants.**

**Civ. A. No. 87–2614–V.**

United States District Court, D. Kansas.

Nov. 20, 1990.

180

Marc E. Elkins, J. Emmett Logan, Morrison, Hecker, Curtis, Kuder & Parrish, Overland Park, Kan., Alison M. Berman, Federal Deposit Ins. Corp., Office of the Gen. Counsel, Washington, D.C., for plaintiff.

Jeffrey L. Willis, Willis & Holmes, Ernest McRae, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This is an action by the Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity as assignee of Farmer's State Bank of Selden, Kansas (the "Bank"), against the former directors and officers of the Bank in which the FDIC seeks recovery for damages claimed to have been sustained by the Bank as a result of the defendants' alleged negligence, breach of fiduciary and statutory duties, and breach of contract related to the alleged mismanagement of certain loans. Defendants Edith Carman, Stephen C. Carman, and Fred McKee (the "Carman defendants") were officers of the Bank and have had a default judgment entered against them. The remaining defendants, Donald Ashley, Dale Brantley, Kenneth Rogers, Richard V. Stevenson, L.W. Wessel, and John Wessel (the "Ashley defendants") were outside directors of the Bank before it was placed into receivership.

This matter now comes before the court on the Ashley defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(b) (Doc. 131). The Ashley defendants maintain that the claims brought by FDIC in its corporate capacity are barred by its failure to comply with the one (1) year statute of limitations for filing claims with

the Bank's receiver under K.S.A. 9–1909. The Ashley defendants further maintain that the FDIC's cause of action accrued more than three years prior to the filing of this action and consequently FDIC's tort claims are barred by the three (3) year statute of limitations contained in 28 U.S.C. § 2415(b). The plaintiff FDIC has responded and opposes the Ashley defendants' motion (Doc. 138). For the reasons set forth below, the Ashley defendants' motion is denied.[1]

The court is familiar with the standards governing the consideration of a motion for summary judgment. A moving party is entitled to summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The court must determine "whether there is a need for a trial— whether, in other words, there is any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party: "a party opposing a properly supported motion for summary judgment may not rest on mere allegation

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Id. The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

## I. BACKGROUND

The Kansas Bank Commissioner appointed the FDIC to act as receiver for the Bank on December 20, 1984. The FDIC in its capacity as receiver then sold most of the assets of the Bank, including all claims of the Bank, to the FDIC in its corporate capacity under a Contract of Sale dated December 20, 1984. The sale was approved by the District Court of Sheridan County, Kansas on the same date. On December 16, 1987, the FDIC in its corporate capacity filed this action against the Ashley and Carman defendants.

## II. APPLICABILITY OF K.S.A. 9–1909

■ The Ashley defendants argue that the claims asserted by the FDIC in its corporate capacity are barred by the one year statute of limitations contained in K.S.A. 9–1909. K.S.A. 9–1909 provides that:

All claims of depositors and other creditors must be filed with the receiver within one year after the date of the receiver's appointment, and if any claim is not so filed then it shall be barred from participating in the estate and assets of any such bank or trust company.

The Selden State Bank purchased certain deposits and loan assets belonging to the Bank from the FDIC as receiver. Defendants contend that the FDIC in its corpo-

---

1. The Pretrial Order entered in this action required that dispositive motions be filed on or before May 7, 1990. Defendants' motion was filed on May 24, 1990 and thus is untimely. Nonetheless, the court will consider this motion on its merits.

rate capacity is in the position of an unsecured depositor vis-a-vis the Bank since it agreed to indemnify the Selden State Bank for the deposits which it purchased. Therefore, defendants argue, the FDIC in its corporate capacity should have filed its claims against the Ashley defendants with the FDIC in its capacity as receiver within one year of the FDIC's appointment as receiver. The defendants also claim that K.S.A. 9–1906 provides that the receiver of an insolvent bank, in taking charge of such bank, acts for the benefit of that bank's depositors, creditors, and stockholders. *See Federal Deposit Ins. Corp. v. Renda,* 692 F.Supp. 128, 136 (D.Kan.1988) ("the FDIC and the FSLIC as receivers act for the benefit of the failed institutions and their creditors, depositors, and shareholders"). Since all of the Bank's creditors, except the FDIC in its corporate capacity, have been paid, defendants claim that the FDIC is suing the very people, the shareholder/director defendants, that it is supposed to protect.

The court finds that the defendants' argument is without merit. By the plain language of the statute, the time limitation of K.S.A. 9–1909 bars recovery from the "estate and assets of [the] bank or trust company." In the case at bar, the FDIC is seeking to recover from the Ashley defendants in their capacity as Bank directors. It is not seeking recovery from the "estate and assets" of the Bank. Moreover, the FDIC is seeking to recover on behalf of the Bank as the assignee of the Bank's claims, and not as a "creditor or depositor" of the Bank. *See* K.S.A. 9–1906 (the FDIC as receiver is vested with the failed institution's claims and steps into the shoes of the bank itself).

That the Ashley defendants are also stockholders of the Bank does not prevent the FDIC in its corporate capacity from bringing suit. The duties of the FDIC differ depending on what capacity the FDIC is acting in. While the receiver's duty may be to act for the benefit of the depositors, creditors and stockholders, when the FDIC is acting in its corporate or supervisory, regulatory capacity it is acting for the benefit of the public and the insurance fund. *See, e.g., First State Bank of Hudson Co. v. United States,* 599 F.2d 558, 563 (3rd Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980). Thus, the protection from suit sought by the Ashley defendants is not provided by K.S.A. 9–1906 since the FDIC is suing in its corporate capacity, and not as the receiver of the Bank. Moreover, the Ashley defendants are being sued as directors, not as shareholders.

Therefore, the court finds that K.S.A. 9–1909 does not apply to this suit since the FDIC filed this suit in its corporate capacity as the assignee of the Bank's claims.[2]

## III. TIMELINESS OF THE FDIC'S TORT CLAIMS

Next, defendants argue that the FDIC's tort claims are barred by the federal three year statute of limitations found in 28 U.S.C. § 2415(b). Specifically, defendants ask the court to overrule *Federal Deposit Ins. Corp. v. Hudson,* 673 F.Supp. 1039 (D.Kan.1987) which held that, for purposes of the federal statute of limitations, the FDIC's cause of action against the officers and directors of an insolvent bank did not accrue until the FDIC accepted appointment as receiver. The court finds that the decision in *Hudson* is still good law and declines to overrule its holding.

Under the doctrine of *Hudson,* the court must apply a two-step analysis to determine if the FDIC's tort claims in this case were filed in a timely manner. *Accord Federal Deposit Ins. Corp. v. Oakes,* 1989 WL 151954 (D.Kan.1989); *Federal Deposit Ins. Corp. v. Howse,* 736 F.Supp. 1437 (S.D.Tex.1990). First, it must determine whether the causes of action against the Ashley defendants were time-barred under the applicable Kansas statute of limitations at the time the FDIC acquired the state law tort claims at issue. This step is necessary because it is well established under *Guaranty Trust Co. v. United States,*

---

**2.** Since K.S.A. 9–1909 does not apply to this action, the court does not reach plaintiff's argument that the state statute of limitations is preempted by a federal statute of limitations.

304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938) that a claim which has expired under state law cannot be revived by its transfer to a federal agency. Secondly, if the claims were still viable under state law at the time of transfer, then the state statute of limitations ceases to operate and the federal limitations period begins. *FDIC v. Hudson,* 673 F.Supp. at 1041. Thus, the court must determine whether the federal limitations period expired between the date the FDIC acquired the tort claims and the date it filed this suit.

### A. Viability of the Tort Claims Under Kansas Law

The defendants do not discuss the effect of the Kansas statute of limitations on the timeliness of the FDIC's tort claims. However, the state statute of limitations is an important part of the two-step analysis of *Hudson* and the defendants also discuss the "adverse domination" theory which, when applied, serves to toll the state statute of limitations.

The relevant question is whether the Kansas two (2) year period of limitations for tort claims (K.S.A. 60–513) had expired at the time the FDIC acquired the claims and the federal statute of limitations began to run. Under Kansas law the statute of limitations starts to run in a tort action at the time a negligent act causes substantial injury if both the act and the injury are reasonably ascertainable by the injured person. *Roe v. Diefendorf,* 236 Kan. 218, 689 P.2d 855, 859 (1984). Thus, where the plaintiff is not aware that he has suffered an injury, Kansas courts apply the rule that an action does not accrue until discoverable by a party entitled to bring the action. *See, e.g., Pancake House, Inc. v. Redmond,* 239 Kan. 83, 716 P.2d 575 (1986); *Clark Jewelers v. Satterthwaite,* 8 Kan.App.2d 569, 662 P.2d 1301 (1983).

Assuming for the moment that the Kansas discovery rule does not apply to this case, the FDIC would only be able to sue for those loans which were made and defaulted upon less than two years prior to the date that the FDIC became the Bank's receiver and thereby acquired the tort claims. However, the court does not need to decide when the FDIC might have discovered the alleged injury and wrongdoing because the court in *Hudson* held that Kansas would adopt the theory of "adverse domination" for determining when a cause of action against a bank's officers and directors accrues. *FDIC v. Hudson,* 673 F.Supp. at 1043; *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1523 (10th Cir.1990) (theory of "adverse domination" adopted as a matter of federal common law of the Tenth Circuit).

> Under the theory of adverse domination: as long as a bank is dominated by the same wrongdoers against whom a cause of action exists, the statute of limitations is tolled. The rationale behind this theory is that the wrongdoers cannot be expected to bring an action against themselves. Only when a new entity takes control of the bank, be it a receiver or a new board of directors, can suit against the wrongdoers be brought as a practical matter.

*FDIC v. Hudson,* 673 F.Supp. at 1042; *cf. Farmers & Merchants Nat'l Bank,* 902 F.2d at 1522–23 (under theory of "adverse domination," plaintiff must effectively negate the possibility that an informed director could or would have induced the corporation to sue).

The parties in this case disagree as to when the FDIC took "control" of the Bank. The defendants claim that the FDIC took control on December 13, 1984 when the president of the Bank, Steve Carman, was allegedly removed from office. Plaintiff contends that the FDIC did not take control until December 20, 1984 when it was appointed receiver. The court finds that there are issues of fact as to the control and management of the Bank between December 13, 1984 and December 20, 1984. However, the court further finds that these issues of fact are not material and do not need to be decided because they do not affect the viability, under state law, of the FDIC's cause of action. To wit, on whichever date the FDIC took control of the Bank, the tolling of the statute of limita-

tions under adverse domination would end and the two year limitations period of K.S.A. 60–513 would begin to run. However, as discussed above, the federal statute of limitations preempted the state limitations period on December 20, 1984, when the FDIC acquired the tort claims. Thus, even if the FDIC took control of the Bank as early as December 13, 1984, the two year limitations period would not have run as of December 20, 1984. Consequently, the court finds that the FDIC's tort claims had not yet expired under state law when the FDIC acquired them.

### B. Accrual Under the Federal Statute of Limitations

Next, the court must decide whether the FDIC's tort claims are barred by the applicable federal statute of limitations. 28 U.S.C. § 2415(b) requires a government agency to bring any tort claim within three years "after the right of action first accrues." The FDIC, when acting in its corporate capacity, is a government agency and § 2415 governs actions brought by the FDIC to enforce its claims for money even though the FDIC may have acquired the claim by assignment. *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 143 (10th Cir.1985). Further, 28 U.S.C. § 2416(c) tolls § 2415 for any period during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with responsibility to act in the circumstances...."

The Ashley defendants contend that the FDIC's tort claims accrued, for purposes of § 2415(b), at the time the allegedly wrongful acts occurred; in this case, at the time the allegedly improvident loans were approved by the Board of Directors. The defendants cite as their primary authority *United States v. Cardinal*, 452 F.Supp. 542 (D.Vt.1978) which held that the FDIC's cause of action on a promissory note accrues when the claim could first be sued upon (i.e. upon default), regardless of whether the government possessed the claim at that time. The court considers this case inapposite because it does not recognize the possibility of concealment of evidence by the Bank's directors and officers. The date on which a cause of action accrues on a defaulted promissory note is clear because the note itself contains a maturity date after which the bank or the FDIC may sue. In discussing *Cardinal* and other similar cases involving the FDIC and defaulted promissory notes, the District of Utah noted:

> [T]here are legitimate concerns about the legal reality (referring to stale claims) and the fairness of subjecting the debtor to the threat of suit for up to nine or ten years after default [on a promissory note]. But certainty, incentive and knowledge are absent when the bank is injured by its own directors who have the power to conceal evidence of their misconduct. Consequently, for the majority of courts, application of adverse domination principles to claims against directors of failed banks compels the conclusion that § 2415 periods do not run until the FDIC acquires the claims.

*Federal Deposit Ins. Corp. v. Paul*, 735 F.Supp. 375 (D.Utah 1990); *see also Federal Deposit Ins. Corp. v. Former Officers & Directors of Metropolitan Bank*, 884 F.2d 1304, 1308 (9th Cir.1989). The court agrees with this rationale and affirms the holding in *Hudson* that the FDIC's cause of action did not accrue until it became the Bank's receiver on December 20, 1984. Therefore, the FDIC had until December 20, 1987, to file this suit. Since this action was commenced on December 16, 1987, the court finds that the FDIC's tort claims were filed in a timely manner.

IT IS, THEREFORE, BY THE COURT ORDERED that the Ashley defendants' motion for summary judgment is denied.

IT IS SO ORDERED.