No. 56,573

ELMER D. CHILSON, d/b/a CHILSON MASONRY, and MERCHANTS NA-TIONAL BANK OF TOPEKA, KANSAS, *Plaintiffs/Appellees,* v. CAPITAL BANK OF MIAMI, FLORIDA, *Defendant/Appellant.*

(701 P.2d 903)

Opinion filed June 21, 1985.

*Steve R. Fabert,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and was on the briefs for appellant.

*Anne L. Baker,* of Eidson, Lewis, Porter & Haynes, of Topeka, argued the cause, and *Dale L. Somers,* of the same firm, was with her on the briefs for appellee Merchants National Bank.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiffs Elmer D. Chilson and his bank, Merchants National Bank of Topeka, Kansas, (Merchants) brought

this action against the Capital Bank of Miami, Florida, (Capital) which accepted an unindorsed check drawn by Chilson. The trial court granted summary judgment to Merchants based upon a claim for breach of express written warranty. Capital appealed and the Court of Appeals reversed the trial court. *Chilson v. Capital Bank of Miami*, 10 Kan. App. 2d 111, 692 P.2d 406 (1984). Merchants' petition for review was accepted by this court.

On June 2, 1977, Elmer D. Chilson wrote a $4,550 check on his Merchants account payable to the order of Murlas Brothers Commodities, Inc. for the purchase of gold futures. The check was presented to Capital for collection by its depositor Caribbean Bronze, Inc., without indorsement by the payee Murlas or any other party. Capital, after crediting its customer's account, stamped the back of the check "P.E.G. Capital Bank of Miami N.A." and sent the check through the banking channels for payment by Merchants. On June 13, Merchants paid the check and charged Chilson's account.

On September 1, 1978, Chilson brought the missing indorsement to Merchants' attention and demanded that his account be recredited. Merchants asked Capital to obtain the missing indorsement but none was provided. On May 20, 1982, Merchants paid Chilson $4,550.

Merchants filed an action in Chilson's and its own name on the grounds of its subrogated claim (K.S.A. 84-4-407), charging Capital with breach of the implied warranties of title and presentment. K.S.A. 84-4-207. Capital filed a motion to dismiss claiming the three-year statute of limitations on implied contracts or liabilities imposed by statute had expired. K.S.A. 60-512. The trial court determined that an action based on the warranties implied by the Uniform Commercial Code (U.C.C.) banking provisions (K.S.A. 84-4-207) was controlled by K.S.A. 60-512 and that the three-year statute of limitations barred such an action. However, the court held that the "P.E.G." stamp on the check was an express warranty and was actionable as a breach of a written contract. Applying the five-year statute of limitations appropriate for such an action (K.S.A. 60-511), the trial court denied Capital's motion to dismiss. Defendant appealed the subsequent decision of the court granting summary judgment to plaintiffs.

The Court of Appeals found that the writing was insufficient to establish the essential terms of an express warranty, that the suit actually involved an implied warranty, and that the three-year statute of limitations therefore applied. Merchants now appeals that decision.

The question raised is whether Merchants' (a payor bank) action for breach of Capital's (a depositary bank) written warranty "prior endorsements guaranteed" is controlled by the five-year written contract statute of limitations or whether the action is one for breach of implied warranty to which the three-year statute of limitations applies.

The relation between a bank and its depositor is that of debtor and creditor. The bank is under an implied contract to disburse the money standing to the depositor's credit only upon his order and directions. The bank makes payment upon a forged indorsement at its peril, and it cannot charge payment upon a forged indorsement against the drawer's account in the absence of some ground of estoppel or negligent act on his part. A bank is not only bound to know the signature of its depositor, so that it is liable for a payment on the customer's forged check or draft, but it is also bound to know that the indorsement of one who is a stranger is genuine, and it is liable for the payment to the wrong person of an altered check or draft. 5B Michie on Banks and Banking § 277a (repl. vol. 1983). This is the rule which has been followed in Kansas, even before the enactment of the U.C.C. *Herbel v. Peoples State Bank,* 170 Kan. 620, 228 P.2d 929 (1951); *Mackey-Woodard, Inc. v. Citizens State Bank,* 197 Kan. 536, 543, 419 P.2d 847 (1966).

Under the U.C.C. this same result is reached. K.S.A. 84-4-401 requires the drawee bank to recredit its customer's account if it pays on a check with a forged indorsement, or be liable to the intended payee in conversion. 84-3-419(1)(c). The bank, however, can kick the loss upstream to collecting banks, each of which has warranted to its transferee that it has good title to the check. A forged indorsement breaches the warranty under 84-4-207(1)(a). The warranties under 84-4-207 allow the drawee bank to shift liability for forged indorsements and material alterations to prior collecting banks. See Kansas Comments 1983 to 84-4-207.

Merchants claims that Capital should be liable for payment of

a check without any indorsement, the same as payment on a forged instrument.

While Kansas has not specifically held that payment on a check without any indorsement is the same as payment on a forged indorsement, a number of other jurisdictions have so held. *Stapleton v. First Sec. Bank,* _____ Mont. _____, 675 P.2d 83, 86 (1983). We agree that the burden of making sure that indorsements are valid rests directly on the first bank in the collection chain, because it is the first bank which has the best opportunity to verify the indorsements. This standard applies equally to the situation of missing indorsements as well as forged indorsements. *First Nat. Bank, Etc. v. Trust Co. of Cobb Cty.,* 510 F.Supp. 651, 655 (N.D. Ga. 1981).

Under the Uniform Commercial Code no wrong is committed by a collecting bank simply because an indorsement is missing. If the check is not in fact converted or stolen by the depositor, the missing indorsement is a mere formality. K.S.A. 84-4-205 authorizes a depositary bank to supply the missing indorsement of its customer by certifying that the check is forwarded for collection, without the need to obtain an actual signature. The purpose of allowing a collecting bank to supply the missing indorsement is to speed up collections by eliminating any necessity to return to a nonbank depositor a check he may have failed to indorse. After supplying the missing indorsement the bank may become a holder in due course under the Code.

Capital, as a collecting bank, warranted to Merchants, a payor bank, that it had good title, that all signatures were genuine or authorized (missing indorsement supplied by Capital pursuant to 84-4-205), and that the item had not been materially altered. K.S.A. 84-4-207(1). Capital is liable to Merchants under the U.C.C. for the amount of the check.

Capital, however, has raised a statute of limitations defense. The question then is which statute of limitations should apply: the three-year statute for breach of implied warranty or the five-year statute for breach of a written contract? Merchants contends that the contract statute of limitations should apply because it claims that Capital created an independent contract with Merchants by stamping the check P.E.G. (prior endorsements guaranteed). Capital contends no contract was created. The Court of Appeals found that the P.E.G. stamp did not meet

the requisites for establishing a completed contract and that the three-year statute of limitations applied.

The general rule is that a written agreement, contract or promise in writing which falls within the five-year statute of limitations, K.S.A. 60-511(1), must contain all its material terms in writing. A contract which is partly in writing and partly oral is in legal effect an oral contract so far as the statute of limitations may be concerned. The writing necessary to have the additional protection of the five-year statute must be full and complete in itself so as not to require proof of extrinsic facts to establish all essential contractual terms. *Fey v. Loose-Wiles Biscuit Co.,* 147 Kan. 31, 75 P.2d 810 (1938); Annot., 3 A.L.R.2d 809, 813; 51 Am. Jur. 2d, Limitation of Actions § 94, p. 668; 53 C.J.S., Limitations of Actions § 60, p. 1018.

The writing need not, however, be signed by all parties, and where a writing containing all the essential terms of a contract is executed by the party to be charged and the contract is accepted and acted on by the other party the contract is one in writing for purposes of determining which statute of limitations applies. *Miller v. William A. Smith Constructing Co.,* 226 Kan. 172, 174, 603 P.2d 602 (1979). See *Fey v. Loose-Wiles Biscuit Co.,* 147 Kan. at 34-36; 51 Am. Jur. 2d, Limitation of Actions § 94, p. 669.

The Court of Appeals examined the stamped "P.E.G." on the check to see whether it created a separate independent contract based on the rules delineated in *Miller.*

The Court of Appeals concluded that the error in Merchants' argument, that all the elements of a written contract were present, was that "in order for the P.E.G. stamp to have any meaning in light of the absence of an endorsement, reference must be made to the obligations implied at law by the U.C.C." *Chilson v. Capital Bank of Miami,* 10 Kan. App. 2d at 113. K.S.A. 84-4-205 provides that a depositary bank may supply the indorsement of its customer unless the check states that the payee's indorsement is required.

The Court of Appeals determined that the cases cited by Merchants, applying K.S.A. 60-511, all relate to the application of the limitation period for written contracts where a primary writing is enforced and additional rights are also implied by law. In *Cairo Cooperative Exchange v. First Nat'l Bank of Cunningham,* 228 Kan. 613, 620 P.2d 805 (1980), *modified on re-*

*hearing* 229 Kan. 184, 624 P.2d 420 (1981), the plaintiff sought to enforce the written direction to its own bank restricting indorsement of a number of checks. The obligation of the bank to honor a customer's restrictive indorsement is implied by law into their relationship but the plaintiff's right of action arose out of the existence of the writing itself. Similarly, in *Clark Jewelers v. Satterthwaite,* 8 Kan. App. 2d 569, 573, 662 P.2d 1301 (1983), the plaintiff relied on a written agreement which created a security interest as the basis for relief. While the law extended the force of this agreement to the particular defendant involved in the case, the agreement itself created the exclusive right sought to be enforced. By contrast, the plaintiff in this case had a right of action against defendant independent of the writing, based on the implied warranties of the U.C.C. The writing, at best, simply echoed the obligation already imposed by law; it did not create a means of relief.

Under pre-U.C.C. law, the liability of indorsers was based on contract or quasi-contract law. All parties to a check and those who were later involved in the banking transactions that followed gave express warranties of title. The use of a stamp by a bank with the symbols "P.E.G." expressly warranted "prior endorsements guaranteed" in most jurisdictions.

The U.C.C. became law in Kansas on January 1, 1966. The purpose of the act was to simplify, clarify and modernize the law governing commercial transactions. K.S.A. 84-1-102. The U.C.C. displaced the prior law; the prior law now supplements the U.C.C. provisions when they are silent. K.S.A. 84-1-103.

The rules under Article 4 of the U.C.C. may be varied by agreement, whether between bank and depositor or among banks in the collection process, subject to certain statutory restrictions. K.S.A. 84-4-103. There was no expressed intent by the parties that the provisions of the U.C.C. should not apply. Therefore, we must look at the U.C.C. to determine if its provisions are applicable in this case. Merchants' claim that a contract arose when Capital stamped "P.E.G." on the check is faulty. Capital never expressed an intent that the terms of the U.C.C. should not apply.

The U.C.C. imposes implied warranties on each customer and collecting bank on transfer or presentment of items, on each customer or a collecting bank who obtains payment or accept-

ance of an item and on each prior customer and collecting bank who, in good faith, pays or accepts the item. The customer or collecting bank warrants he has good title to the item or is authorized to obtain payment or acceptance on behalf of one that has good title. K.S.A. 84-4-207. This section is intended to give the effect formerly obtained when collecting banks used the stamp "P.E.G" in collection transfers and presentment between banks. The warranties are implied automatically under the U.C.C. Since Capital had not expressed an intent that the provisions of the U.C.C. would not apply, its stamping "P.E.G." on the back of the check was no more than an acknowledgement of the U.C.C.'s implied warranties under K.S.A. 84-4-207.

In this case the check was never indorsed by the payee, Murlas Brothers, or Caribbean Bronze, Inc., the customer of Capital, a collecting bank. There was no expressed intent of the parties that the provisions of the U.C.C. should not apply. The action, therefore, is upon a contract, obligation, or liability created by statute, requiring the action be brought within the three-year statute of limitations, K.S.A. 60-512. The Court of Appeals correctly determined that the trial court erred in applying the five-year statute of limitations, K.S.A. 60-511.

Merchants, in addition, raised the issue of whether the Florida or Kansas statute of limitations applies. The Court of Appeals correctly determined that Kansas law applies.

The district court is reversed. The Court of Appeals is affirmed.